IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


THOMAS TWAIN FAULKNER,

          Plaintiff,

v.                                    Civil Action No. 5:09CV123
                                                         (STAMP)
COLUMBIA GAS TRANSMISSION, LLC,
(formerly Columbia Gas
Transmission Corporation),
NISOURCE CORPORATE SERVICES COMPANY,
and NISOURCE, INC.

          Defendants.


                 <u>MEMORANDUM OPINION AND ORDER</u>
                <u>GRANTING IN PART AND DENYING IN PART</u>
                 <u>DEFENDANTS' MOTION FOR JUDGMENT</u>
                  <u>ON THE ADMINISTRATIVE RECORD,</u>
              <u>DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>
             <u>AND GRANTING PLAINTIFF'S ALTERNATIVE REQUEST FOR</u>
             <u>REMAND FOR FURTHER CONSIDERATION OF THE EVIDENCE</u>

                         I.  <u>Background</u>

     The plaintiff, Thomas Twain Faulkner, filed a complaint in the
Circuit Court of Ohio County, West Virginia, asserting a breach of
contract claim for payments allegedly due under a severance policy.
The defendants removed this civil action to this Court pursuant to
28 U.S.C. § 1441(b) as a civil action arising under the laws of the
United States as the plaintiff's claims are completely pre-empted
by the Employee Retirement Income Security Act of 1974, 29 U.S.C.
§ 1001 ("ERISA").

     Columbia Gas Transmission, LLC employed the plaintiff as a
"Team Leader - Operations" (hereinafter "Team Leader").   The
plaintiff's employer eliminated his position.   The plaintiff was
offered the position of "Project Leader - Valve Specialist"

(hereinafter "Project Leader") which he accepted, but later declined. At the time of his resignation, the plaintiff sought severance benefits, alleging that the two positions were not comparable. The NiSource Severance Policy, the ERISA plan at issue, covered the plaintiff. The severance policy provided that if Columbia Gas Transmission, LLC terminated the plaintiff without cause and if the plaintiff were not offered other, comparable employment, he would be entitled to receive severance pay. The NiSource Benefits Committee administers the ERISA plan. This committee denied the plaintiff's claim for severance benefits, stating that the plaintiff had been offered comparable employment with the company. The plaintiff filed an appeal, which was denied.

After this action was removed to this Court, the parties briefed the issue of whether discovery should be permitted to supplement the administrative record, and this Court subsequently determined that discovery was not appropriate. The parties agreed upon a briefing schedule for dispositive motions, and both parties filed timely cross-motions for summary judgment. Both of these motions have been fully briefed, and are ripe for disposition by this Court. For the reasons explained below, judgment on the administrative record is granted in part to the defendants, and the plaintiff's alternative request for remand is granted with regard to whether the Project Leader position was "principally located within a 50 mile radius of the place of principal employment on the date of termination of employment [the Team Leader position]."

## II. Applicable Law

A court reviewing an ERISA plan administrator's decision to deny benefits "must initially decide de novo whether the plan's language grants the administrator discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion." Feder v. The Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000). If the district court makes the determination that an ERISA plan "vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." Williams, 609 F.3d at 629-30.[1] A district court does "not disturb a plan administrator's decision if the decision is reasonable, even if [it] would have come to a contrary conclusion independently." Id. at 630. If, however, the plan does not vest the plan administrator with discretion, the appropriate standard of review is de novo. Woods v. Prudential Ins. Co. of Am., 528 F.3d 320, 322 (4th Cir. 2008).

---

[1]Courts in this circuit previously applied a "modified abuse-of-discretion standard . . . if a plan administrator had a conflict of interest because the administrator both determined benefit eligibility and paid claims, the administrator's decision was given less deference than if the administrator had no conflict of this nature." Williams, 609 F.3d at 630. In Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), the United States Supreme Court held that "the presence of a plan administrator's conflict of interest did not alter the abuse-of-discretion standard of review." Id. at 630-31. Instead, it is to be considered "but one factor among many that a reviewing judge must take into account." Glenn, 554 U.S. at 116.

When a district court employs an abuse of discretion standard, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." <u>The Sheppard & Enoch Pratt Hosp. Inc. v. Travelers Ins. Co.</u>, 32 F.3d 120, 125 (4th Cir. 1994). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." <u>Ellis v. Metro. Life Ins. Co.</u>, 126 F.3d 228, 232 (4th Cir. 1997). In determining reasonableness of a decision under an abuse of discretion standard, a court may take into consideration many factors, including but not limited to:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard [*343] relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

<u>Booth v. Wal-Mart Stores, Inc.</u>, 201 F.3d 335, 342-43 (4th Cir. 2000).

### III.  <u>Discussion</u>

The NiSource ERISA plan provides:

> The Committee has the complete discretion and authority with respect to the Policy and its application. The Committee reserves the right to interpret the Policy, prescribe, amend and rescind rules and regulations in relation to it, determine the terms and provisions of severance benefits and make all other determinations it deems necessary or advisable for the administration of the policy.

This Court has previously determined that this language grants discretionary authority in the NiSource Benefits Committee, and for the reasons set forth in this Court's previous memorandum opinion and order, again makes that determination, and thus applies an abuse of discretion standard of review. <u>Williams</u>, 609 F.3d at 629-630; <u>see</u> ECF No. 31 *4-9. When a district court employs an abuse of discretion standard of review of an ERISA plan's fiduciary's decision to deny a beneficiary benefits, the Court "will not disturb such a decision if it is reasonable" based upon the facts known to the fiduciary at the time of review and the language of the plan. <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan</u>, 201 F.3d 335, 341-42 (4th Cir. 2000).

Initially, this Court finds that the NiSource administrative and investment committee's reasoning process was deliberate and principled. After the plaintiff appealed the initial denial of benefits, the committee underwent a review of the administrative record and issued a report of their reasoning process in continuing to deny the plaintiff's claim for severance benefits. The report indicates to this Court that the committee underwent an in-depth review of the record before it, thoroughly analyzed the Project Leader position as compared to the Team Leader position, and used its discretion to apply its factual findings to the language of the policy. The plaintiff argues that NiSource destroyed relevant documents, thus making their decision-making process unsound. However, the only document which this Court can find to have been

destroyed is the plaintiff's initial severance application, which included a letter agreement regarding coverage under the severance plan.  However, this Court fails to see how the destruction of these documents could reflect upon the process, given that a copy of the letter agreement is present in the administrative record (ECF No. 22-1 *21-25), that no party to this action denies that the application documents existed, nor does any party seem to disagree as to their contents.  It seems clear that the destruction of these documents was simply part of a managerial process of destroying documents which are no longer in force or applicable going forward.

The NiSource policy entitles a plan participant to severance benefits "only if he or she is terminated by an affiliate for any reason other than Cause, and . . . is not offered Comparable Employment."  Both parties seem to agree that this issue in this case is not whether the plaintiff was terminated for a reason other than cause, but rather whether he was offered "Comparable Employment" as that term is defined by the policy.  The NiSource Committee found that the Project Leader position was comparable to the plaintiff's previous position of Team Leader, and denied the plaintiff's request for benefits on this basis.

The definition of "Comparable Employment" provided in the NiSource policy is three-pronged and requires that the offered replacement employment have (1) "substantially the same or similar work schedule" as was applicable to the position held immediately prior to the termination of employment; (2) substantially the same

or similar "base compensation and base skills as were applicable to the position held with any Affiliate immediately prior to the termination of employment;" and (3) that the replacement employment be "principally located within a 50 mile radius of the place of principal employment on the date of termination of employment." The NiSource Committee found, as was required in order to deny the plaintiff's claim for benefits, that the Project Leader job offered to the plaintiff met all three of these requirements in relation to the plaintiff's former position of Team Leader.

The plaintiff contends that the work schedule for the Project Leader position differed from the Team Leader position with regard to travel. This Court believes that whether travel-time is a part of the "work schedule" as that term is used in the NiSource policy is a question that is open to reasonable interpretation in both directions, and thus does not disturb the decision of the committee on this issue. However, the issue of travel-time will be addressed in this Court's discussion of the 50-mile radius requirement. The plaintiff also argues that the committee committed an abuse of discretion with regard to the other two elements. The Court will address each of those elements in turn.

Upon inspection of the administrative record, it is clear to this Court that the committee's conclusion that the Project Leader position had substantially the same or similar "base compensation and base skills" as the Team Leader position, was reasonable. The committee made specific findings as to the similarities between the

percentage of time each job required indoor and outdoor work, as well as the percentage of time spent sitting versus standing, walking, bending, and/or lifting and found that the jobs were very similar in that regard. The committee also made specific findings as to the fact that both positions required multiple leadership skills, as well as "[e]xcellent written, verbal, presentation and electronic communication skills," travel, and specific knowledge of "codes, procedures, policies, and regulations." (ECF No. 22-1 *123.) Further, the committee made a finding that, while neither position description's description offered a starting salary, the committee was informed that the plaintiff's pay did not change with the Project Leader position. Thus, it was assumed that the salary was identical.

The plaintiff argues that while the similarities found by the committee do exist, the reality is that the two positions are extremely different and not at all similar in practice. Further, he argues that he was and continues to be unaware of the compensation that was offered for the Project Leader position and that the information that he does have shows the compensation structure to be different. He also maintains that the similarities relied upon by the committee form an insufficient basis to find that the Project Leader position was comparable to the Team Leader position. This Court disagrees.

First, it is important to note the language of the policy with regard to this prong: the offered new employment must have

"substantially the same or similar . . . <u>base compensation</u> and <u>base skills</u> . . . ." (emphasis added). This language does not create a requirement that the work of the job itself actually be substantially the same or similar to the plaintiff's former employment, just that the "base skills" meet this qualification. Thus, whether the jobs were completely different from each other in practice is irrelevant to the inquiry. With regard to compensation, the policy only requires that "<u>base compensation</u>" be <u>substantially</u> the same or <u>similar</u>. It seems clear to this Court that this language delineates that the actual amount of money offered at the outset is the relevant inquiry, and whether the salary was to be structured differently would only be an element of the inquiry rather than the dispositive issue. The plaintiff offered no argument that he was going to make less money at the Project Leader position than he did at the Team Leader position.

Based upon these findings with regard to the language of the policy, this Court finds that the facts relied upon by the committee with regard to this prong were sufficient to reasonably come to the conclusion that similarity of base skills and base pay was satisfied. Additionally, the qualifying words of "substantially" and "similar" leave this inquiry open to many reasonable yet different interpretations. There is no requirement within the policy that a comparable job be identical in any respect to the previous position.

The plaintiff points out all of the differences between the positions which he feels make the Project Leader position not "substantially the same or similar" to the Team Leader position and claims that a failure to consider the statements of the plaintiff with regard to differences between the jobs is an abuse of discretion. He cites <u>Donovan v. Eaton Corp.</u>, 462 F.3d 321 (4th Cir. 2006), and <u>Guthrie v. Nat'l Rural Elec. Coop Ass'n Long-Term Disability Plan</u>, 509 F.3d 644, 650-51 (4th Cir. 2007), to support this argument. In both of these cases, the plan administrator was found to have abused his discretion in denial of benefits because, while his decision may have been supported by evidence in the record, he failed to consider opposing evidence which favored granting benefits. While this Court agrees with the plaintiff that failure to consider the entire record would be an abuse of discretion, such is not the case here.

In the committee's review of the plaintiff's claim, it not only considered the similarities between the base skills required for the two relevant positions, but also outlined many of the differences raised by the plaintiff in his statement that was made a part of the administrative record, and in his briefings in this case. It is true that not all of the plaintiff's concerns, nor every piece of evidence lending itself to the plaintiff's position is specifically referenced in the committee's review. However, the inclusion of specific findings with regard to a significant amount of this evidence suggests to this Court that the entire record was

indeed considered. The committee is not required to make specific findings with regard to each piece of evidence before it for its decision to be reasonable. See Lovejoy v. Am. Elec. Power Long-Term Disability Plan, 2012 US Dist. LEXIS 13234 No. 2:10-cv-01386 *28-29 (S.D. W. Va. Feb. 3, 2012) (decision reasonable when each of the reviewing committee-members reviewed all of the plaintiff's medical records but chose not to base decision on subjective complaints of plaintiff). While the plaintiff disagrees with the committee's final decision that the similarities outweighed the differences, this decision was reasonable and based upon substantial evidence on both sides of the issue.

The plaintiff makes several other allegations of abuse of discretion, including that earlier cases decided by the committee were not consistent with the denial here, that the committee was unreasonable in its reliance upon hearsay evidence, and that the committee was biased in favor of the employer in its decision. This Court does not find merit in any of these arguments. Initially, the claim that earlier cases were decided inconsistently has not been supported by any facts. The plaintiff makes this argument with only conclusory language supported solely by the name of another employee whose case was apparently inconsistently decided, and a citation to a quotation from the plaintiff's own statement in the administrative record. With no support for this contention, this Court cannot make a determination as to its legitimacy.

Further, this Court has already determined that the Federal Rules of Evidence "do not apply to an ERISA administrator's benefits determination, and [this Court] review[s] the entire administrative record, including hearsay evidence relied upon by the administrator." Black v. Long Term Disability Ins., 582 F.3d 738, 746 n.3 (7th Cir. 2009). Included in this principle is that, the committee, in its discretionary capacity, can choose to give whatever weight it deems appropriate to every piece of evidence before it. Because another would have given certain evidence more or less weight is irrelevant. It does not appear from the record here that the committee's discretion in this regard was abused.

Finally, this plaintiff cannot show that this committee was biased or conflicted simply by arguing that the decisions made were not favorable to the plaintiff or that the committee gave more weight to evidence submitted by his employer than to his own statements. As a result of the foregoing, the defendants are granted judgment on the administrative record with regard to the similarity of the Project Leader position's hours, base skills, and base compensation.

However, this Court cannot grant judgment for the defendants with regard to the 50-mile radius requirement. The plan requires that a comparable job be "principally located within a 50-mile radius of the place of principal employment on the date of termination of employment." The committee determined that, because the plaintiff had begun Project Leader work at the same location as

his previous employment, the distance was not an issue. However, the language of this requirement is quite different than the previously discussed requirements in that it is quite specific -- with regard to the distance and measure of this distance. The provision requires that the comparable employment's "principal" location be within a strict "50-mile radius" of the "principal" location of the previous employment. There is no language in this section which could be interpreted in varying ways, but rather, this language requires a strict distance analysis and determination. The committee did not make such a determination.

The committee determined, without explanation, that because the plaintiff began work that it determined to be part of the Project Leader position in the same location where he worked before, distance was not an issue. However, there is no determination made as to whether this was the principal location of the job or not. The plaintiff asserts that the record supports the possibility that the principal location of the new position was eventually going to be St. Albans, a location "well over a hundred miles" from his previous location. Further, the plaintiff states that the amount of travel and duration of travel associated with the Project Leader position suggests that the principal location could be floating, and at times be even further than St. Albans.

There is no determination by the committee of what exactly "principal" means, or whether the initial starting location of the Project Leader job as determined in the committee's report

qualifies as such. Further, neither the defendants nor the committee have addressed the plaintiff's arguments regarding the evidence of the amount of travel required, or that St. Albans may in fact, have been the desired principal location into the future. This Court thus finds that the committee's determination with regard to the Project Leader position's principal location was not supported by substantial evidence. As a result, this civil action is remanded to allow the committee to properly consider the evidence in this regard to make a decision as to whether the Project Leader position is actually comparable to the plaintiff's former position under the terms of the policy.

## IV. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment and/or judgment on the administrative record is GRANTED IN PART and DENIED IN PART. The plaintiff's motion for summary judgment is DENIED, and the plaintiff's alternative request for remand for further consideration of the evidence is GRANTED as indicated above. Finally, the plaintiff's request for the Court to take judicial notice of testimony before it in a separate case involving Ni-Source is DENIED AS MOOT.[2] This case is REMANDED to

---

[2]This Court previously held that no evidence outside of the administrative record in this case would or could be considered by this Court in this matter. (ECF No. 31 *9-10.) Further, Federal Rule of Evidence 201 does not apply to testimony such as this, because it is not information that "is not subject to reasonable dispute" in that its accuracy "cannot be reasonable questioned." Neither does Federal Rule of Evidence 801(d)(2) apply because the request to take judicial notice of a fact is not connected to the admissibility of testimony to that fact at trial.

14

the administrative committee for further consideration of the evidence on the specific issue identified above. It is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment in favor of the defendant on all issues except for the 50-mile radius issue described above, on which this Court remands this action to the NiSource administrative committee for further consideration.

DATED:    February 22, 2012


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE